4:45

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
OCT 12 2007
U.S. COURT OF FEDERAL CLAIMS

BID PROTEST

| | |
|---|---|
| ERACENT, INC.<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant. | CASE NUMBER<br>07-724 C<br>JUDGE: |

## COMPLAINT

Plaintiff, ERACENT, INC. ("ERACENT"), brings this bid protest action against the UNITED STATES OF AMERICA, acting through the General Services Administration ("GSA") and the Department of the Navy ("Navy"). The protest arises out of the Navy's exercise of an option under delivery order number N00104-04-F-Q514 under contract number GS-35F-4543G. In support of this cause of action, ERACENT states as follows:

## PARTIES

1. ERACENT is a corporation duly organized under the laws of Delaware with its principal place of business at 8133 Easton Road, Ottsville, PA 18942.

2. The United States, through the General Services Administration ("GSA"), awarded contract number GS-35F-4543G, a multiple award schedule contract to DLT Solutions, Incorporated.

3. The United States, through the Department of the Navy ("Navy") issued delivery order number N00104-04-F-Q514 under contract number GS-35F-4543G (the "Delivery Order")

on September 30, 2004. The Navy exercised an option number N4703907RCBS013 to the Delivery Order (the "Option") on September 28, 2007. The Delivery Order was for non-personal services to provide delivery of controlled, web-enabled access to Navy inventory data. The Option was for an enterprise wide license for BDNA Inventory Application.

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(1).

## FACTS

4. Eracent develops and sells a comprehensive suite of information technology ("IT") asset management solutions for enterprise level organizations, both commercial and government and both domestic and international. Asset management solutions for information technology allows managers to identify and manage computer network components such as computer operating systems, printers, voice over internet devices, firewalls, routers, and software applications residing on computer desktops and servers.

4. On or about August 2005, the Navy established a new office to manage spending for enterprise-wide IT systems. The office, known as the Office of the Assistant Chief of Naval Operations-Information Technology ("ACNO-IT") works with a Navy acquisition organization, the Program Executive Office for IT ("PEO-IT").

5. In 2004, PEO-IT initiated an IT Asset Discovery project. The object of the project was to provide complete IT asset visibility to IT management. The project covered all IT networked IT asset information including business devices and applications in the Navy with the exception of classified networks, tactical networks and afloat networks.

6. The Navy awarded the Delivery Order to DLT Solutions, Incorporated ("DLT") in the amount of $4,158,872.71 on September 30, 2004, the last day of Fiscal Year 2004. Based on information and belief, the Delivery Order was issued without competition in violation of Section 803 of the National Defense Authorization Act for Fiscal Year 2002, Pub. L. 107-107 and was awarded for products and services that were not on DLT's GSA multiple award schedule.

7. The Delivery Order consisted of three contract line item numbers ("CLINs") CLINs, 0001, 0002, and 0003 which were funded at time of award and three option CLINs, 0004, 0005, and 0006, which were not funded at that time.

8. CLIN 0001 for the delivery of controlled, web-enabled access to Navy IT inventory data had 3 sub-CLINs with a final delivery date of April 28, 2005 for all sub-CLINs--210 days after the Delivery Order award date of September 30, 2004.

9. CLIN 0002 for ongoing operations and reports had a 10 month period of performance with a completion date of July 31, 2005.

10. CLIN 0003 for identical services as those of CLIN 0001 for the delivery of controlled, web enabled access to Navy IT inventory data had a final delivery date of June 27, 2005 for all sub-CLINs—270 days after the Delivery Order award date of September 30, 2004.

11. Option CLIN 0004 was for identical services to CLIN 0002 and covered two time periods in three months increments. Based on information and belief, the Navy previously exercised its option for CLIN 0004.

12. Option CLIN 0005 had 3 sub-CLINs, 0005AA, 0005AB, and 0005AC. Sub-CLIN 0005AA, at primary issue in this protest, was for:

> BDNA Inventory Application—Enterprise wide perpetual license for the Department of the Navy

- Terms and conditions of the BDNA Software License Maintenance Agreement apply to this software license as shown in Attachment B

- Software purchase includes one year of support provided there has been no lapse in the performance period.

13. The price for option sub-CLIN 0005AA was "1 lot" for "2,526,246.08."

14. Based on information and belief, the "BDNA Inventory Application—Enterprise wide perpetual license" was not an offering on the GSA multiple award schedule Contract held by DLT on September 30, 2004.

15. The Delivery Order included Federal Acquisition Regulation ("FAR") clause 52.217-9 – Option to Extend the Term of the Contract which states:

> (a) The Government may extend the term of this contract by written notice to the Contractor within thirteen months; provided that the Government gives the Contractor a preliminary written notice of its intent to extend at least 45 days before the contract expires. The preliminary notice does not commit the Government to an extension.
>
> (b) If the Government exercises this option, the extended contract shall be considered to include this option clause.
>
> (c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed 42 months.

16. The Delivery Order included a listing of responsibilities of the Contracting Officer's Representative which included submitting a written report to the contracting officer with 60 days of completion of the order.

17. The Navy published a "DON Enterprise IT Asset Management Lessons Learned" document on June 8, 2006, regarding the Delivery Order. Among other statements, the document states that: "[t]he current project concluded in June, 2006."

18. On September 28, 2007, the last working day of fiscal year 2007, the Navy issued a request to exercise the Option under Delivery Order N00104-04-F-Q514 as Request Number

N4703907RCBS013 under contract number GS-35F-4543G to DLT for sub-CLIN 0005AA, (the "Option").

19. The Option amount was for $1,263.123.04. The amount for sub-CLIN 0005AA of the 2004 Delivery Order was $2,526,246.08.

20. The Option was for:

Software, excluding ORACLE licenses, IAW Attachment A, SOW

BDNA Inventory Application – Enterprise wide perpetual license for the Department of the Navy

- Terms and conditions of the BDNA Software License Maintenance Agreement apply to this software license as shown in Attachment B

- Software purchase includes one year of support provided there has been no lapse in the performance period.

ACRN:AC applies

21. The Option also states: "2. By execution of this modification, both parties agree that the delivery of the BDNA license in Item 0005 shall be the latest applicable version of the name software and that this purchase includes one year of support."

22. The current GSA Advantage! website for DLT Solutions, Incorporated for its GSA multiple award schedule lists just two products for BDNA. The first is the "BDNA Inventory Application" at a price of $55.92 and the second is BDNA "Maintenance" at a price of 11.18. *See* https://www.gsaadvantage.gov/advgsa/advantage/search/search.do?BV_UseBVCookie=Yes&op=0&rq=bdna&sort=0&mf=&cat=ADV&act=refine&sk=D9812&q=45GS-35F-4543G

23. Based on information and belief, the "latest applicable version" of the "BDNA Inventory Application – Enterprise wide perpetual license" is not currently offered by DLT on its GSA multiple award schedule.

24. Based on information and belief, the version of the "BDNA Inventory Application – Enterprise wide perpetual license" that was current as of September 30, 2004 was not offered by DLT on its GSA multiple award schedule on September 30, 2004.

25. Based on information and belief, one year of support for the "latest applicable version" of the "BDNA Inventory Application – Enterprise wide perpetual license" is not currently offered by DLT on its GSA multiple award schedule.

26. Based on information and belief, the Navy did not seek competition nor follow the requirements for ordering from the GSA multiple award schedule for the requirements that are intended to be met by the BDNA Inventory application.

27. On or about May 1, 2006, after business presentations to PEO-IT officials, the Office of Naval Research ("ONR"), at the request of PEO-IT officials, began a proof of concept evaluation of a software solution for IT asset management offered by Eracent in direct competition with the product and services offered by BDNA.

28. On July 13, 2006 officials from ONR briefed interested parties including Chief Information Officers from various commands in the Navy. They reported that the proof of concept of the Eracent solution was very much a success based on ONR's evaluation.

29. On October 25, 2006, the Navy issued a competitive Request for Quotes on the Network Centric Solutions indefinite delivery/indefinite quantity contract for a pilot program for further review of a possible IT inventory management system in the Navy.

30. Eracent, with its then-business partner Multimax, responded to the Request for Quotes and was selected to participate in the pilot program.

31. On November 3, 2006, the pilot program was awarded to Multimax and Eracent. The Multimax/Eracent team successfully and timely performed the individual tasks under the pilot program which ended on May 30, 2007. The pilot program demonstrated that there were other better alternatives to IT asset management than the BDNA product and services.

32. On July 19, 2007, the Navy issued solicitation number N00039-07-R-5007 as a competitive solicitation set aside for exclusive participation by small business concerns. The solicitation was for a Navy-wide IT asset discovery and management tool with a perpetual license and five years of support. The solicitation required a more robust IT asset discovery and management tool than is apparently offered by BDNA.

33. On July 28, 2007, BDNA filed a protest of the solicitation at the Government Accountability Office ("GAO") arguing in part that the solicitation as written was restrictive of competition.

34. On or about July 28, 2007, other companies also filed protests of the solicitation at GAO.

35. On August 21, 2007, the Navy advised GAO that it was taking corrective action and stated that the Navy "will analyze the requirements for undue restrictiveness and bias and will revise the requirements, as appropriate."

36. On September 25, 2007, counsel for Eracent wrote the General Counsel for the Navy expressing concern that a sole source award was being made to BDNA for at least part of the work contemplated by the previously issued competitive RFP.

37. On October 1, 2007, the Deputy General Counsel for the Navy responded to the September 25, 2007 letter and stated that the Navy was exercising an option on an existing contract.

38. On October 9, 2007, counsel for the Navy provided counsel for Eracent with a copy of the Delivery Order and the Option exercise.

**Count 1 – Violation of Requirements For Competition, The Option**

39. Plaintiff hereby incorporates by reference paragraphs 1 through 38 as if fully stated herein.

40. Defendant exercised the Option under the Delivery Order for the latest version of an enterprise wide BDNA Inventory Application software and maintenance support that is not on the GSA multiple award schedule contract on which the order was placed.

41. By exercising the Option for a product and service not on the GSA Multiple award schedule contract on which the order was placed, Defendant failed to comply with the requirements of the Competition in Contracting Act including but not limited to the requirements for competition among all capable and responsible potential offerors.

42. Eracent is a capable and responsible potential offeror that is capable of offering a solution that will meet the Navy's needs.

43. The violation of the statutory requirements of the Competition in Contracting Act directly prejudiced Eracent, an active competitor in the marketplace for IT inventory management software tools, by denying Eracent the opportunity to compete to fulfill the Navy's requirements.

44. A temporary restraining order and preliminary injunction will be in the best interest of Eracent and the government alike in order to ensure that lawful procedures are followed so

that the best possible solution is obtained by the Navy that represents the best overall value at the lowest possible fair and reasonable price.

**Count 2 – Violation of Requirements for Competition, the Delivery Order**

45. Plaintiff hereby incorporates by reference paragraphs 1 through 44 as if fully stated herein.

46. Defendant executed the 2004 Delivery Order for an enterprise wide BDNA Inventory Application software and maintenance support that was not on the GSA multiple award schedule contract on which the order was placed.

47. By executing the 2004 Delivery Order for a product and service not on the GSA Multiple award schedule contract on which the order was placed, Defendant failed to comply with the requirements of the Competition in Contracting Act including but not limited to the requirements for competition among all capable and responsible potential offerors.

48. Eracent is a capable and responsible potential offeror that was capable of offering a solution that would have meet the Navy's needs.

49. The violation of the statutory requirements of the Competition in Contracting Act directly prejudiced Eracent, an active competitor in the marketplace for IT inventory management software tools, by denying Eracent the opportunity to compete to fulfill the Navy's requirements.

50. The violation of the statutory requirements of the Competition in Contracting Act with regard to the 2004 Delivery Order

50. A temporary restraining order and preliminary injunction will be in the best interest of Eracent and the government alike in order to ensure that lawful procedures are now followed

so that the best possible solution is obtained by the Navy that represents the best overall value at the lowest possible fair and reasonable price.

**Count 3 – Violation of Mandatory Limited Ordering Procedures, 2004 Delivery Order**

51. Plaintiff hereby incorporates by reference paragraphs 1 through 50 as if fully stated herein.

52. Defendant executed the 2004 Delivery Order for an enterprise wide BDNA Inventory Application software and maintenance support without seeking limited competition among GSA schedule holders.

53. By executing the 2004 Delivery Order without seeking limited competition among GSA schedule holders, Defendant failed to comply with the requirements of Section 803 of the fiscal year 2002 Defense Authorization Act, Public Law No. 107-107 as implemented in regulations at the Department of Defense FAR Supplement 208.494-70.

54. Eracent is a capable and responsible potential offeror that was capable of offering a solution that would have meet the Navy's needs in 2004.

55. The violation of the statutory requirements for limited competition directly prejudiced Eracent, an active competitor in the marketplace for IT inventory management software tools, by denying Eracent the opportunity to compete to fulfill the Navy's requirements.

56. A temporary restraining order and preliminary injunction will be in the best interest of Eracent and the government alike in order to ensure that lawful procedures are now followed so that the best possible solution is obtained by the Navy that represents the best overall value at the lowest possible fair and reasonable price.

**Count 4 – Improper Exercise Of An Expired Option On The 2004 Delivery Order**

57. Plaintiff hereby incorporates by reference paragraphs 1 through 56 as if fully stated herein.

58. Defendant executed the 2007 Option for the latest version of an enterprise wide BDNA Inventory Application software and maintenance support after the term of the 2004 Delivery Order had expired and after the term of the right to exercise options had expired.

59. By executing the 2007 Option without seeking competition to fulfill the requirements, Defendant failed to comply with the requirements for competition as stated in the Competition in Contracting Act.

60. Eracent is a capable and responsible potential offeror that was capable of offering a solution that would have meet the Navy's needs.

61. The violation of the statutory requirements for competition directly prejudiced Eracent, an active competitor in the marketplace for IT inventory management software tools, by denying Eracent the opportunity to compete to fulfill the Navy's requirements.

62. A temporary restraining order and preliminary injunction will be in the best interest of Eracent and the government alike in order to ensure that lawful procedures are now followed so that the best possible solution is obtained by the Navy that represents the best overall value at the lowest possible

WHEREFORE, Plaintiff, Eracent prays that this Court enter judgment in this matter as follows:

a. Restraining and enjoining Defendant from further performance or use of software or services obtained pursuant to the exercise of the Option number N4703907RCBS013 to the Delivery Order number N00104-04-F-Q514 under Contract number GS-35F-4543G;

b. Restraining and enjoining Defendant from proceeding with any further products or services listed in Delivery Order number N00104-04-F-Q514 under Contract number GS-35F-4543G;

c. Awarding Eracent such other and further relief as this Court may deem necessary and proper.

Respectfully submitted,

G. Matthew Koehl
William A. Shook
V. Greg Vogel

Kirkpatrick & Lockhart
Preston Gates Ellis LLP
1601 K. Street N.W.
Washington, D.C. 20006
Tel: (202) 236 1487
Fax: (202) 778-9100

Date: October 12, 2007