**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| ERACENT, INC. | ) | CASE NUMBER |
| Plaintiff, | ) | ____________ |
| v. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIONS**

# TABLE OF CONTENTS

**I. STATEMENT OF THE ISSUES** ........ 1

**II. STATEMENT OF THE CASE** ........ 2

**III. FACTUAL BACKGROUND** ........ 3

**IV. LEGAL ANALYSIS** ........ 8

Modification P0008, To Delivery Order N00104-04-F-Q514 Under Contract Number GS-35F-4543G Violates Law And Regulation Because The BDNA Enterprise Agreement And Maintenance Package Is Not An Approved FSS Item And The Navy Was, Therefore, Required To Award The Contract For This Requirement Using "Full and Open" Competition Procedures ........ 8

The Navy's Initial Award Of The Delivery Order To DLT Violates Law And Regulation Because The BDNA Enterprise Agreement Was Not An Approved FSS Item And The Navy Was, Therefore, Required To Conduct A Formal Competition For This Requirement ........ 13

The Navy Violated Law And Regulation By Failing To Follow The Mandatory Limited Ordering Procedures For Awarding FSS Task And Delivery Orders ........ 14

The Navy's Attempted Exercise Of CLIN 0005AA Was Untimely Because The Option Period Had Expired ........ 16

**V. THE REQUIREMENTS FOR INJUNCTIVE RELIEF ARE SATISFIED** ........ 17

**VI. REMEDY SOUGHT** ........ 18

## TABLE OF AUTHORITIES

### CASE LAW

*Armed Forces Merch. Outlet, Inc.*,
B-294281, 2004 CPD ¶ 218 (Oct. 12, 2004) .............................................. 9-10, 13

*ATA Defense Indus., Inc. v. United States*,
38 Fed.Cl. 489 (June 27, 2007)........................................................10, 12, 13, 14

*Hosp. Klean of Texas, Inc. v. United States*,
65 Fed.Cl. 618 (Ct. Fed. Cl. 2005)..............................................................18

*Labat-Anderson, Inc. v. United States*,
65 Fed.Cl. 570 (Ct. Fed. Cl. 2005)..............................................................17

*OAO Corp. v. United States*,
49 Fed.Cl. 478 (Ct. Fed. Cl. 2001)..............................................................17

*OMNIPLEX World Servs. Corp.*,
B-291105, 2002 CPD ¶ 199, 2002 WL 31538212 (Nov. 6, 2002)......10, 12, 13, 14

*Tarheel Specialties, Inc.*,
B-298197, 2006 CPD ¶ 140, 2006 WL 2820577 (July 17, 2006) .....................9, 13

*United Int'l Investigative Servs., Inc. v. United States*,
41 Fed.Cl. 312 (Ct. Fed. Cl. 1998)..............................................................17

*U.S. Ass'n of Importers of Textiles and Apparel v. United States*,
413 F.3d 1344 (Fed. Cir. 2005)..................................................................17

### STATUTES

41 U.S.C. 259(b)(3) ..........................................................................................9

Federal Acquisition Regulation ("FAR") 8.402(a)...........................................................9

FAR 6.102(d)(3) ..............................................................................................9

FAR 8.402(f)...............................................................................................9, 10

FAR 8.404(d)..................................................................................................9

**OTHER**

Defense Federal Acquisition Regulation Supplement, 67 Fed. Reg. 65,505 (Oct. 25, 2002) .......... 14

DoD FAR Supplement (DFAR) 208.494-70(c)(1)(B) .......... 14-15

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| ERACENT, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NUMBER<br><br>________________ |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIONS**

**PLAINTIFF'S BRIEF**

## I. STATEMENT OF THE ISSUES

The issues presented in this matter are:

1. Did the United States Department of the Navy ("Navy") violate the Competition in Contracting Act ("CICA") by exercising a Federal Supply Schedule ("FSS") delivery order option for a Navy-wide enterprise software license and maintenance package when such items have not been approved for sale on the underlying FSS contract held by DLT Solutions, Inc. ("DLT")?
2. Did the Navy violate CICA by awarding the delivery order containing the Navy-wide enterprise software license and maintenance package when such items were not approved for sale on the underlying FSS contract held by DLT?

3. Did the Navy violate law and regulation by awarding the delivery order to DLT without following mandatory competition procedures for Department of Defense ("DoD") awards of FSS task and delivery order contracts?
4. Did the Navy improperly exercise an expired option in the delivery order?

## II. STATEMENT OF THE CASE

Plaintiff, Eracent, submits this Memorandum of Points and Authorities in support of its Motion for a Temporary Restraining Order and Preliminary and Permanent Injunction.

This bid protest involves an IT asset management program in the Navy and competing commercial software tools that can accomplish this important function thereby improving IT asset management throughout the Navy and ultimately reducing the expenditure of federal dollars. Although the Navy has the stated intent of competing the ultimate program effort, the Navy has improperly exercised an option on a federal supply schedule contract for products and services that are not included in that contract and for a price that has never been deemed to be fair and reasonable by a duly authorized contracting officer. That attempt is in direct violation of the requirements for full and open competition of the Contracting in Competition Act and clear precedence established by this Court for requiring federal agencies to comply with statutory requirements when purchasing products and services on federal supply schedules and purchasing products and services that are not on a utilized supply schedule contract. Based on currently available information, the Navy has sought to use a contract vehicle that avoids full and open competition for a product that is not on that contract through the exercise of an option on a delivery order that was also awarded in violation of law and has since expired by its own terms.

## III. FACTUAL BACKGROUND

Plaintiff, Eracent, develops and sells a comprehensive suite of IT asset management solutions for enterprise level organizations, both commercial and government and both domestic and international. Asset management solutions for IT allows managers to identify and manage computer network components such as computer operating systems, printers, voice over internet devices, firewalls, routers, and software applications residing on computer desktops and servers.

On or about August 2005, the Navy established a new office to manage spending for enterprise-wide IT systems. The office, known as the Office of the Assistant Chief of Naval Operations-Information Technology ("ACNO-IT") works with a Navy acquisition organization, the Program Executive Office for IT ("PEO-IT").

In 2004, PEO-IT initiated an IT Asset Discovery project. The object of the project was to provide complete IT asset visibility to IT management. The project covers all IT networked IT asset information including business devices and applications in the Navy with the exception of classified networks, tactical networks and afloat networks.

On September 30, 2004, the last day of fiscal year 2004, the Navy awarded a delivery order number N00104-04-F-Q514 (the "Delivery Order") to DLT Solutions, Incorporated ("DLT") in the amount of $4,158,872.71. Attachment 1. Based on information and belief, the Delivery Order was issued without competition in violation of Section 803 of the National Defense Authorization Act for Fiscal Year 2002, Pub. L. 107-107 for products and services that were not then on DLT's multiple award Federal Supply Schedule contract.

The Delivery Order consisted of three CLINs, 0001, 0002, and 0003, which were funded at time of award and three option CLINs, 0004, 0005, and 0006, which were not funded at that

time. CLIN 0001 which was for the delivery of controlled, web-enabled access to Navy IT inventory data had 3 sub-CLINs with a final delivery date of April 28, 2005 for all sub-CLINs--210 days after the Delivery Order award date of September 30, 2004.

CLIN 0002 which was for ongoing operations and reports had a 10 month period of performance with a completion date of July 31, 2005.

CLIN 0003 which was for identical services as those of CLIN 0001 for the delivery of controlled, web enabled access to Navy IT inventory data had a final delivery date of June 27, 2005 for all sub-CLINs—270 days after the Delivery Order award date of September 30, 2004.

Option CLIN 0004 was for identical services to CLIN 0002 and covered two periods in three months increments. Based on information and belief, the Navy previously exercised its option for CLIN 0004.

Option CLIN 0005 had 3 sub-CLINs, 0005AA, 0005AB, and 0005AC. Sub-CLIN 0005AA, at primary issue in this protest, was for:

> BDNA Inventory Application—Enterprise wide perpetual license for the Department of the Navy
>
> - Terms and conditions of the BDNA Software License Maintenance Agreement apply to this software license as shown in Attachment B
>
> - Software purchase includes one year of support provided there has been no lapse in the performance period.

*Id.*

The price for option sub-CLIN 0005AA was "1 lot" in the amount of "$2,526,246.08."

Based on information and belief, the "BDNA Inventory Application—Enterprise wide perpetual license" was not an offering on September 30, 2004, on the GSA multiple award schedule Contract held by DLT.

The Delivery Order included Federal Acquisition Regulation ("FAR") clause 52.217-9 – Option to Extend the Term of the Contract which states:

> (a) The Government may extend the term of this contract by written notice to the Contractor within thirteen months; provided that the Government gives the Contractor a preliminary written notice of its intent to extend at least 45 days before the contract expires. The preliminary notice does not commit the Government to an extension.
>
> (b) If the Government exercises this option, the extended contract shall be considered to include this option clause.
>
> (c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed 42 months.

*Id.*

The Delivery Order included a listing of responsibilities of the Contracting Officer's Representative which included submitting a written report to the contracting officer within 60 days of completion of the order. The Navy published a "DON Enterprise IT Asset Management Lessons Learned" document on June 8, 2006 regarding the Delivery Order. Among other statements, the document states that: "[t]he current project concluded in June, 2006." Attachment 2.

On September 28, 2007, the last working day of fiscal year 2007, the Navy issued Modification 00008 a request to exercise an option under Delivery Order N00104-04-F-Q514 as Request Number N4703907RCBS013 under contract number GS-35F-4543G to DLT for sub-CLIN 0005AA (the "Option"). Attachment 3. The Option amount was for $1,263.123.04 although the sub-CLIN 0005AA of the Delivery Order awarded in 2004 was $2,526,246.08.

20. The Option was for:

Software, excluding ORACLE licenses, IAW Attachment A, SOW

BDNA Inventory Application – Enterprise wide perpetual license for the Department of the Navy

- Terms and conditions of the BDNA Software License Maintenance Agreement apply to this software license as shown in Attachment B
- Software purchase includes one year of support provided there has been no lapse in the performance period.

ACRN:AC applies

*Id.*

The Option also states: "2. By execution of this modification, both parties agree that the delivery of the BDNA license in Item 0005 shall be the *latest applicable version* of the named software and that this purchase includes one year of support." Emphasis added; *Id.* The current GSA Advantage! website listing GSA-approved items for DLT's GSA multiple award schedule lists just two items for BDNA. The first is the "BDNA Inventory Application" at a price of $55.92 and the second is BDNA "Maintenance" at a price of $11.18. *See* https://www.gsaadvantage.gov/advgsa/advantage/search/search.do?BV_UseBVCookie=Yes&op=0&rq=bdna&sort=0&mf=&cat=ADV&act=refine&sk=D9812&q=45GS-35F-4543G

Based on information and belief, the "latest applicable version" of the "BDNA Inventory Application – Enterprise wide perpetual license" is not currently offered by DLT on its GSA Federal Supply Schedule contract. Furthermore, based on information and belief, the version of the "BDNA Inventory Application – Enterprise wide perpetual license" that was current on September 30, 2004 was not offered by DLT on its GSA Federal Supply Schedule contract on September 30, 2004. Furthermore, based on information and belief, one year of support for the "latest applicable version" of the "BDNA Inventory Application – Enterprise wide perpetual license" is not currently offered by DLT on its GSA Federal Supply Schedule contract.

Based on information and belief, the Navy did not seek competition nor follow the requirements for ordering from the GSA Federal Supply Schedule for the requirements that are intended to be met by the BDNA Inventory application product and services.

On or about May 1, 2006, after business presentations to PEO-IT officials, the Office of Naval Research ("ONR"), at the request of PEO-IT, began a proof of concept evaluation of a software solution for IT asset management offered by Eracent in direct competition with the product offered by BDNA. At the completion of that proof of concept, officials from ONR, on July 13, 2006, briefed interested parties including Chief Information Officers from various commands in the Navy that the proof of concept of the Eracent solution was very much a success based on ONR's evaluation.

On October 25, 2006, the Navy issued a competitive Request for Quotes on the Network Centric Solutions indefinite delivery/indefinite quantity contract for a pilot program for further review of a possible IT inventory management system in the Navy. Eracent, with its business partner Multimax, responded to the Request for Quotes and was selected to participate in the pilot program. On November 3, 2006, the pilot program was awarded to Multimax and Eracent. The Multimax/Eracent team successfully and timely performed the individual tasks under the pilot program which ended on May 30, 2007. The pilot program demonstrated that there were other better alternatives to IT asset management than the BDNA product.

On July 19, 2007, the Navy issued solicitation number N00039-07-R-5007 as a competitive solicitation set aside for exclusive participation by small business concerns. The solicitation was for a Navy-wide IT asset discovery and management tool with a perpetual license and five years of support. The solicitation required a more robust IT asset discovery and management tool than is apparently offered by BDNA.

On July 28, 2007, BDNA filed a protest of the solicitation at the Government Accountability Office ("GAO") arguing in part that the solicitation as written was restrictive of competition. On or about July 28, 2007, other companies also filed protests of the solicitation at GAO.

In August, 2007, the Navy advised GAO that it was taking corrective action and stated: "It is our intent to take corrective action that may include a re-solicitation or other appropriate action after a more detailed review." Attachment 4. On September 25, 2007, counsel for Eracent wrote the General Counsel for the Navy expressing concern that a sole source award was being made to BDNA for at least part of the work contemplated by the previously issued competitive RFP. Attachment 5. On October 1, 2007, the Deputy General Counsel for the Navy responded to the September 25, 2007 letter and stated that the Navy was exercising an option on an existing contract. Attachment 6.

On October 9, 2007, counsel for the Navy provided counsel for Eracent with a copy of the Delivery Order and the Option exercise that is under protest in this action.

## IV. LEGAL ANALYSIS

### Count 1

**Modification P0008, To Delivery Order N00104-04-F-Q514 Under Contract Number GS-35F-4543G Violates Law And Regulation Because The BDNA Enterprise Agreement And Maintenance Package Is Not An Approved FSS Item And The Navy Was, Therefore, Required To Award The Contract For This Requirement Using "Full and Open" Competition Procedures.**

The General Services Administration ("GSA") administers the FSS program, which program provides federal agencies a simplified process (commonly referred to as "limited competition" or "limited ordering" procedures) for obtaining common commercial supplies and

services. Federal Acquisition Regulation ("FAR") 8.402(a). Under the FSS program, GSA awards multiple award "Schedule" contracts with GSA pre-approved prices and terms and conditions of sale. Before a product or service is approved for sale on a Schedule contract, GSA must make a specific determination that the contractor's price for such product or service meets the regulatory "fair and reasonable" pricing standard. FAR 8.404(d). The complete list of GSA-approved items are set forth in the FSS contractor's "Authorized Federal Supply Schedule Pricelist" so that prospective government ordering agencies are aware of which contractor items are FSS-approved and, therefore, subject to purchase using only the limited FSS competition procedures. FAR 8.402(f).

The limited competition procedures established for the FSS program satisfy CICA's requirement for full and open competition as a matter of law. 41 U.S.C. 259(b)(3) (2000); FAR 6.102(d)(3). Consequently, so long as a contracting agency completes the mandatory but limited competitive procedures for awarding FSS task and delivery orders, it may award FSS task and delivery orders without having to perform many of the required steps to meet CICA's basic standard for "full and open" competition for awarding government contracts requirements (e.g., formal advertising and the use of competitive procedures).

However, before a contracting agency may properly place an order with an FSS contractor using only the limited ordering procedures, it must verify that all items are within the scope of the applicable contractor's FSS contract, as indicated in the contractor's Authorized Federal Supply Schedule Pricelist. *Tarheel Specialties, Inc.*, B-298197, 2006 CPD ¶ 140, 2006 WL 2820577 (July 17, 2006) (sustaining protest where contracting agency "improperly determined that the services called for under the task order were within the scope of the vendor's FSS contract"); *see also Armed Forces Merch. Outlet, Inc.*, B-294281, 2004 CPD ¶ 218, at 4

(Oct. 12, 2004). Because a duly authorized GSA contracting officer has not determined non-FSS items to be fairly and reasonably priced and appropriate for purchase by government agencies using only the limited ordering procedures applicable to FSS contracts, even incidental amounts of such items must be competitively awarded pursuant to the requirements of CICA and may not properly be included on agency orders for FSS items. FAR 8.402(f ); *ATA Defense Indus., Inc. v. United States*, 38 Fed.Cl. 489, 505 (2007) (sustaining protest against the agency's inclusion of incidental non-FSS items on a FSS delivery order contract). It is now well-settled, therefore, that the contracting agency's purchase of non-FSS products and services requires compliance with the applicable procurement laws and regulations, including those requiring the use of CICA's competitive procedures. *ATA Defense Indus., Inc., supra; OMNIPLEX World Servs. Corp.*, B-291105, 2002 CPD ¶ 199, 2002 WL 31538212, at *4-5 (Nov. 6, 2002).

The Navy's purchase of the BDNA Enterprise Agreement and maintenance support is improper because the subject items were not FSS-approved on the date the Navy exercised option CLIN 0005AA and these items should, therefore, have been the subject of a competitive procurement. Specifically, on September 28, 2007, the Navy issued Modification No. P00008 to the Delivery Order, exercising CLIN 0005AA for: (i) a Navy-wide perpetual use Enterprise Agreement license to BDNA's Inventory Application, and (ii) one year of Navy-wide maintenance support. Modification No. P00008 is priced at $1.26 million, but does not assign a specific price to the software vs. software maintenance purchased through the modification. As of the date of Modification No. P00008, the DLT FSS contract appears to have included only two approved line items for BDNA inventory management software. These items, as listed in the on-line database, GSA Advantage!, are a single-user license priced at $55.92 and a BDNA "Maintenance" item at a price of $11.18. *See*

https://www.gsaadvantage.gov/advgsa/advantage/search/search.do?BV_UseBVCookie=Yes&op=0&rq=bdna&sort=0&mf=&cat=ADV&act=refine&sk=D9812&q=45GS-35F-4543G; Attachment 7. There is no approved line item on DLT's FSS contract to purchase an Enterprise Agreement for BDNA software or an activity-wide maintenance contract. In addition, line item 0005AA is apparently subject to a statement of work (SOW) with enterprise license agreement terms and conditions referenced as "Attachment A" and maintenance support agreement, referenced as Attachment B", neither of which appear to be part of the approved BDNA license and maintenance items approved by GSA for sale through the DLT FSS contract. Thus, there are substantial, material differences between the extremely limited BDNA software license and maintenance offerings approved for sale on the DLT FSS contract and the complex, $1.26 million Enterprise Agreement and support order awarded by the Navy to DLT for BDNA products without competition, including:

- GSA approved a $55.92 BDNA single user license and $11.18 single user maintenance offering as fairly and reasonably priced. GSA has not approved Enterprise Agreement pricing or terms and conditions for BDNA software, nor has it approved activity-wide pricing for maintenance of BDNA software

- On information and belief, the Enterprise Agreement contains a SOW with unique license terms and conditions that differ from BDNA's commercial market versions of these items and its approved GSA offerings of these items

- The Enterprise Agreement is based upon the "latest applicable version" the BDNA software, which appears to be Version 4.0, released on June 11, 2007.[1] On information

[1] http://www.bdna.com/pr_bdna_releases_inventory_v4.shtml; Attachment 8.

and belief, Version 4.0 as purchased by the Navy has not been approved for sale on DLT's FSS contract.

- In contrast to the limited, specifically-priced license and maintenance items approved for sale through BDNA's contract, line item 0005AA does not identify a specific price for the perpetual license rights vs. the one year of software maintenance that the Navy is acquiring.

Given these substantial, material differences between the limited BDNA inventory management software and maintenance offerings approved for sale on DLT's FSS contract and the Navy-wide Enterprise Agreement and maintenance support requirements contained in CLIN 0005AA, the Navy could not reasonably have concluded that the Enterprise Agreement and support were FSS-approved items. The items contained in CLIN 0005AA have never been subjected to GSA review and approval, in particular there has been no determination that an item even remotely resembling an activity-wide enterprise agreement for BDNA software and maintenance is fairly and reasonably priced and contains terms and conditions that are appropriate for agency purchase using only limited FSS ordering procedures. Consequently, it was improper for the Navy to acquire the Enterprise Agreement and support through its exercise of an option in a FSS delivery order contract. Rather, the Navy's acquisition of these non-FSS "products and services requires compliance with the applicable procurement laws and regulations, including those requiring the use of CICA's competitive procedures." *ATA Defense Indus., Inc., supra; OMNIPLEX World Servs. Corp., supra.* We note that BDNA is not the only company manufacturing and deploying IT asset management software. There are numerous other manufacturers' products that could meet the Navy's requirement for enterprise-wide asset

management software, including but not limited to: Eracent; Computer Associates; Hewlett Packard; BMC; and, Microsoft.

**Count 2**

**The Navy's Initial Award Of The Delivery Order To DLT Violates Law And Regulation Because The BDNA Enterprise Agreement Was Not An Approved FSS Item And The Navy Was, Therefore, Required To Conduct A Formal Competition For This Requirement.**

As detailed above, before a federal agency may properly place an order with a FSS contractor using only the limited ordering procedures, it must verify that all items are within the scope of the applicable vendor's FSS contract. *Tarheel Specialties, Inc., supra.*; *Armed Forces Merchandise Outlet, Inc., supra.* It is now well settled, therefore, that the contracting agency's purchase of non-FSS products and services requires compliance with the applicable procurement laws and regulations, including those requiring the use of CICA's competitive procedures. *ATA Defense Indus., Inc., supra; OMNIPLEX World Servs. Corp., supra.* Here, on information and belief, on September 30, 2004, when the Navy originally awarded the Delivery Order containing CLIN 0005AA - then priced at $2,526,246.08 - the DLT FSS contract did not contain approved BDNA offerings for an Enterprise Agreement and enterprise-wide maintenance, or for any BDNA items that were substantially similar to the awarded items. The items contained in CLIN 0005AA have never been subjected to GSA scrutiny, in particular there has been no determination that an item even resembling an activity-wide enterprise agreement for BDNA software and maintenance is fairly and reasonably priced and contains terms and conditions that are appropriate for agency purchase using only limited ordering procedures. Rather, the Navy's acquisition of these non-FSS "products and services requires compliance with the applicable procurement laws and regulations, including those requiring the use of CICA's competitive

procedures." *ATA Defense Indus., Inc., supra; OMNIPLEX World Servs. Corp., supra.* By failing to compete CLIN 0005AA requirement as required by CICA, the Navy's award of the Delivery Order violated applicable competition laws and regulations.

**Count 3**

**The Navy Violated Law And Regulation By Failing To Follow The Mandatory Limited Ordering Procedures For Awarding FSS Task And Delivery Orders.**

Section 803 of the fiscal year 2002 defense authorization act (Pub. L. No. 107-107) ("Section 803") required the Secretary of Defense to issue regulations that require competition when placing orders for services costing more than $100,000 by DoD agencies under multiple award contracts such as the contract held by DLT. Section 803 reflected Congressional concern that government agencies were not obtaining sufficient competition from available sources for task and delivery orders under "multiple award" contract programs, specifically including the FSS program. DoD subsequently issued regulations implementing Section 803, which require DoD agencies, when placing an order for services or supplies costing more than $100,000, to contact as many FSS contract holders capable of doing the work as practicable, and to ensure that at least three responses are received, or alternatively, contact all FSS contract holders. Defense Federal Acquisition Regulation Supplement, 67 Fed. Reg. 65,505 (Oct. 25, 2002). Under these rules - applicable to the Navy at the time it awarded the Delivery Order in September 2004 - if the contracting agency did not receive three responses to its RFQ, it was also required to make a written determination stating that no additional qualified contractors were identified despite "reasonable" efforts to do so. DoD FAR Supplement (DFAR) 208.494-70(c)(1)(B). The specific competition requirements imposed by the DoD's Section 803 implementing regulations are as follows:

(c) An order exceeding $100,000 is placed on a competitive basis only if the contracting officer provides a fair notice of the intent to make the purchase, including a description of the supplies to be delivered or the services to be performed and the basis upon which the contracting officer will make the selection, to--

(1) As many schedule contractors as practicable, consistent with market research appropriate to the circumstances, to reasonably ensure that offers will be received from at least three contractors that can fulfill the requirements, and the contracting officer--

(i)(A) Receives offers from at least three contractors that can fulfill the requirements; or

(B) Determines in writing that no additional contractors that can fulfill the requirements could be identified despite reasonable efforts to do so (documentation should clearly explain efforts made to obtain offers from at least three contractors); and

(ii) Ensures all offers received are fairly considered; or

(2) All contractors offering the required supplies or services under the applicable multiple award schedule, and affords all contractors responding to the notice a fair opportunity to submit an offer and have that offer fairly considered.

DoD FAR Supplement (DFAR) 208.494-70 (emphasis added).

Here, on information and belief, the Navy did not solicit any FSS contractors except DLT to compete for the inventory management software and maintenance requirements contained in the Delivery Order. Furthermore, based on information and belief, the Navy did not make the required determination that no other contractors could meet this requirement despite the Navy's reasonable efforts to identify such contractors. Nor could it have made such a determination – as of the September 30, 2004 award of the Delivery Order, there were numerous other manufacturers able to compete for the Navy's requirements for IT asset management software, including but not limited to: Eracent; Computer Associates; Hewlett Packard; BMC; and, Microsoft. By failing to follow the ordering procedures specified in Section 803 and implemented through DFAR 208.494-70, the Navy's award of the Delivery Order to DLT under the FSS program was without "competition" as a matter of law. Accordingly, the award of the Delivery Order violated applicable federal competition law and regulation. It is precisely this type of *de facto* sole-source FSS task order award that Section 803 was

designed to prohibit. Moreover, the fact that the Navy ultimately exercised the option for CLIN 0005AA for only fifty percent of the original award cost ($1.26 million vs. $2.57 million) suggests that the Navy's failure to properly compete this requirement resulted, predictably, in a contract with an unreasonably high price.

**Count 4**

**The Navy's Attempted Exercise Of CLIN 0005AA Was Untimely Because The Option Period Had Expired.**

As noted above, the Delivery Order executed on September 30, 2004, contained an option provision that stated in relevant part: "[t]he Government may extend the term of this contract by written notice to the Contractor within thirteen months from the date of this contract...." Attachment 1. Thirteen months from the date of the Delivery Order was October 31, 2005. As a result, assuming *arguendo* that the Delivery Order was properly issued consistent with applicable law and regulations, the Delivery Order, for purposes of exercising options had expired on October 31, 2005. This is further confirmed by the statement in the June 8, 2006 lessons learned document issued by the Navy that states the work under the Delivery Order "concluded in June, 2006." Attachment 2, page 1. While it is certainly possible for the parties to agree to waive notice requirements with respect to option exercises, in this instance, the parties attempted to modify a term of a Delivery Order that had expired. It would indeed be a novel theory of law that parties to a contract could modify contracts after their natural expiration—when such modification would otherwise violate competition requirements established in law and regulation.

The untimely option exercise further suffers from the fact that CLIN 0005AA specifically stated that: "Software purchase includes one year of support *provided there has been no lapse in the performance period.*" Attachment 3. The facts clearly indicate that there was, in fact, a lapse in the

performance period at least between June 2006 and September 28, 2007. As a result, the option exercise must fail.

## V. THE REQUIREMENTS FOR INJUNCTIVE RELIEF ARE SATISFIED

The Court of Federal Claims has authority to "award any relief that the court considers proper, including ... injunctive relief." *Labat-Anderson, Inc. v. United States*, 65 Fed.Cl. 570, 576 (Ct. Fed. Cl. 2005) (citing 28 U.S.C. § 1491(b)(2) (2005)). In order to obtain either a Preliminary Injunction or a Temporary Restraining Order, the moving party must show the same four factors: "(1) immediate and irreparable injury to the movant; (2) the movant's likelihood of success on the merits; (3) the public interest; and (4) the balance of hardship on all the parties." *U.S. Ass'n of Importers of Textiles and Apparel v. United States*, 413 F.3d 1344, 1346 (Fed. Cir. 2005) (citing *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983)); *OAO Corp. v. United States*, 49 Fed.Cl. 478, 480 (Ct. Fed. Cl. 2001).

As shown in the above discussion, Eracent is likely to succeed on the merits. The Navy has exercised an option on a delivery that has expired for a product that is not on the GSA Federal Supply Schedule contract at a price that has not been determined to be fair and reasonable. This effort has directly prejudiced Eracent by denying it the opportunity to secure a significant contract to meet the Navy's requirements and earn the resulting profits. This type of injury has been recognized as being significant enough to constitute irreparable harm. *United Int'l Investigative Servs., Inc. v. United States*, 41 Fed.Cl. 312, 323 (Ct. Fed. Cl. 1998). Furthermore, "[t]here is an overriding public interest in preserving the integrity of the procurement process by requiring the government to follow its procurement regulations." *Hosp. Klean of Texas, Inc. v. United States*, 65 Fed.Cl. 618 (Ct. Fed. Cl. 2005). Finally, the equitable

relief requested will not harm third parties, because the government is already taking steps to acquire IT assets management software through a competitive process. The issuance of a temporary restraining order and preliminary injunction will preserve the status quo and protect both the Plaintiff's and the public's interest in the integrity of the procurement system.

## VI. REMEDY SOUGHT

Based on the foregoing, Eracent respectfully requests that the Court grant the following remedies: (1) Restrain and enjoin performance of the Option under the Delivery Order for the BDNA Inventory Application awarded to DLT Solutions, Incorporated; and (2) direct the Navy to issue a solicitation in accordance with the requirements of the Competition in Contracting Act for the needed solutions involving IT asset management; (3) award Eracent such other and further relief as this Court may deem necessary and proper; and (4) award Eracent full legal and administrative fees expended to the preparation of this action.

Respectfully submitted,

for G. Matthew Koehl by Victor G. Vogel

G. Matthew Koehl
William A. Shook
V. Greg Vogel
Kirkpatrick & Lockhart
Preston Gates Ellis LLP
1601 K. Street N.W.
Washington, D.C. 20006
Tel: (202) 661-6256
Fax: (202) 778-9100

Date: October 12, 2007