FILED UNDER SEAL

# In the United States Court of Federal Claims

No. 07-724C

(Filed: November 13, 2007)

(Reissued: November 26, 2007)[1]

* * * * * * * * * * * * * * * * * * * * * * *

ERACENT, INC.,

*Plaintiff,*

v.

THE UNITED STATES,

*Defendant,*

and

DLT SOLUTIONS, INC.,

*Intervenor.*

* * * * * * * * * * * * * * * * * * * * * * *

Post-Award Bid Protest; RCFC 52.1 Motion for Judgment on the Administrative Record; Protest of Task Order Under Federal Supply Schedule ("FSS") Contract; Standing of non-FSS Contractor; Scope of FSS Contract.

*G. Matthew Koehl*, Washington, DC, *William A. Shook*, and *V. Greg Vogel*, for plaintiff.

*Allison Kidd-Miller*, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were *Peter D. Keisler*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Todd M. Hughes*, Deputy Director, for defendant. *Lori A. Smith*, Department of the Navy, Mechanicsburg, PA, of counsel.

*David M. Nadler*, Washington, DC, and *Joseph R. Berger*, Washington, DC, for intervenor.

---

OPINION AND ORDER

---

[1]In accordance with the protective order in this case, publication was deferred pending the parties' review for redaction of controlled materials. Those redactions are indicated by brackets.

BRUGGINK, *Judge*.

This is a post-award bid protest action for permanent injunctive relief brought by plaintiff Eracent, Inc. ("Eracent") against the United States. Eracent protests the exercise of an option in 2007 under a delivery order issued to DLT Solutions, Inc. ("DLT") in 2004. Eracent requests that the court permanently enjoin performance of the option and direct the Department of the Navy ("Navy") to issue a solicitation for IT asset management software in accordance with the requirements of the Competition in Contracting Act ("CICA"), 31 U.S.C. §§ 3551-56 (2000).

Pending is plaintiff's motion for judgment on the administrative record pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC") and defendant and intervenor's cross-motions for judgment on the administrative record. Both parties have moved to supplement the administrative record. The Administrative Record ("AR") has been filed, and the matter is fully briefed. Oral argument was heard on November 6, 2007. For the reasons set out below, we deny plaintiff's motion for judgment on the administrative record and request for a permanent injunction, and grant defendant's cross-motion. We also grant both parties' motions to supplement the administrative record.[2]

## BACKGROUND

In September 2004, the Navy prepared a sole source justification to procure BDNA asset discovery services. Asset discovery services are a means to scan networks and identify IT assets. IT assets may include servers, desktops, and business applications. The acquisition of the discovery tool was

---

[2]We grant plaintiff's motion to supplement the administrative record with "DLT Solutions' GSA Price List for FSS Contract No. GS-35F-4543G," (PL 1-102), "Affidavit of Walter Szablowski, submitted on October 24, 2007," (PL 103-128), "Supplemental Declaration of Walter Szablowski, submitted on November 2, 2007," (PL 129-131), and "Department of the Navy Enterprise IT Asset Management Lessons Learned," (PL 132-147). Additionally, defendant also moved to supplement the administrative record with "Supplemental Declaration of Alice Lawaetz, submitted on November 4, 2007." That motion is granted. Generally, the formal administrative record in a procurement is sufficient in a bid protest. We grant motions to supplement the administrative record because the challenged procurement is traceable to a sole source delivery order awarded in 2004.

conducted under a General Services Administration ("GSA") Federal Supply Schedule ("FSS"). BDNA offers its services through a third party reseller for FSS sales, DLT. Before the acquisition could be finalized, however, GSA had to modify DLT's FSS contract to include the BDNA products and services sought by the Navy. On September 10, 2004, DLT's FSS contract was modified to include the following BDNA products. The only description included of the products was the following:

| Special Item No. ("SIN") | Mfg. | Part No. | Product Description | GSA Price |
|---|---|---|---|---|
| 132-33 | BDNA | 9761-0001 | BDNA Inventory Application | $55.92 each |
| 132-34 | BDNA | 9761-0001M | Maintenance | $11.18 each |

(AR 291.) After inclusion of BDNA products on the schedule and in light of the subsequent sole source determination, the Navy could order these products consistently with the full and open competition requirement. 41 U.S.C. § 253, 259(b)(3); 10 U.S.C. § 2304(a)(1).

I. 2004 Delivery Order

On September 30, 2004, the Navy issued delivery order N00104-04-F-Q514 against GSA contract number GS-35F-4543G to DLT. The 2004 Delivery Order contains six Contract Line Item Numbers ("CLINs"):

- CLIN 0001 is for services to provide asset data collected through BDNA scans of the NMCI and legacy networks in the continental United States.
- CLIN 0002 is for ongoing scanning services and reports about the results of the scanning.
- CLIN 0003 is for services to provide asset data collected through BDNA scans of the Navy's NMCI and legacy networks outside the continental United States.
- CLIN 0004 is for an option to purchase continued data delivery services.

- CLIN 0005 is for an option to procure tools and software. Subcontract line item number ("sub-CLIN") 0005AA, the subject of this protest, is for the purchase of "BDNA Inventory Application – Enterprise wide perpetual license for the Department of the Navy." (AR 147.) It states:

  > Software, excluding ORACLE licenses, IAW Attachment A, SOW
  > BDNA Inventory Application – Enterprise wide perpetual license for the Department of the Navy
  >
  > > –Terms and conditions of the BDNA Software License and Maintenance Agreement apply to this software license as shown in Attachment B
  > > –Software purchase includes one year of support provided there has been no lapse in the performance period

  (*Id.*)
- CLIN 0006 is for an option to procure software maintenance services for the BDNA discovery tool.

The original delivery order also includes an option to extend the time periods for exercising options in CLINs 0004, 0005 and 0006. The time periods to exercise options in CLINs 0005 and 0006 were properly extended through a series of modifications to the original delivery order. Modification P00007, issued on March 28, 2007, extended the period available to exercise CLIN 0005 to September 29, 2007. This modification also reduced the price of sub-CLIN 0005AA from [ ] to [ ]. CLINs 0001 through 0004 were exercised in 2004. Sub-CLIN 0005AA, the enterprise-wide license and related support, remained unexercised in 2004.

II. 2007 Exercise of the Option to Purchase BDNA Software

On September 28, 2007, the Navy issued Modification P0008 to exercise the option for sub-CLIN 0005AA and procure the license for the BDNA inventory application agentless discovery tool software. The BDNA Master Software License and Maintenance Agreement defined the "licensed product" as "[ ]." (AR 161.) It defines "updates" as: [

]. (*Id.*) The Navy and BDNA agreed to adopt some changes to this Software License and Maintenance Agreement but made no changes to the definitions of "licensed product" and "updates."

Before exercising this option, the contracting officer compared the DLT option price to the price paid by the Army for an enterprise-wide BDNA license and to proposals received in summer 2007 in connection with a different asset management procurement for Navy Space and Naval Warfare Systems Command ("SPAWAR"). In both comparisons, DLT's option price was [ ].

The Navy had received the proposals for SPAWAR in response to competitive solicitation number N00039-07-R-5007 issued on July 19, 2007, for an asset discovery and management tool solution. On July 28, 2007, BDNA filed a protest of that solicitation at the Government Accountability Office ("GAO"), alleging that the solicitation language overtly favored Eracent. BDNA's protest also alleged that a conflict of interest existed with a Navy representative involved in the procurement. In response to BDNA's protest, the Navy advised GAO by letter dated August 20, 2007, that it would take corrective action and "analyze the requirements for undue restrictiveness and bias[,] . . . review the evaluation criteria of the solicitation[,] . . . and revise such criteria, as appropriate." (AR 621.) By letter to General Counsel of the Navy dated September 25, 2007, counsel for Eracent expressed concern that a sole source award was being made to BDNA for at least part of the work contemplated by the July 2007 solicitation. The Deputy General Counsel of the Navy responded to Eracent by letter dated October 1, 2007, and confirmed the Navy's intent to resume "procurement of an IT asset management tool competitively" after the Navy completed its corrective actions. (AR 579.) The letter informed Eracent that "in the interim . . . because of the urgent need to access previously collected data as well as certain current requirements of the Department, the Department has exercised a valid option on an existing contract." (*Id.*) Thus, in the interim, the Navy exercised the option for sub-CLIN 0005AA through Modification P00008 to the 2004 DLT delivery order.

On October 12, 2007, Eracent brought this bid protest challenging the issuance of the 2004 delivery order to DLT under its GSA schedule and the 2007 exercise of an option under that delivery order for the license to the BDNA inventory application. Eracent asserts and the court assumes, that as of 2007, Eracent's product is capable of providing the IT asset management services required by the Navy.

Eracent requests that this court permanently enjoin DLT from performing the option and direct the Navy to issue a solicitation for IT asset management software on a competitive basis. At the time Eracent filed its suit, however, the license to the BDNA inventory application had been acquired. The only outstanding performance on the ordered items is the continued one year of support for the software.

## DISCUSSION

To place an order using the GSA FSS procedures, the contracting agency must verify that all items on the order are within the scope of the vendor's FSS contract.[3] *Data Mgmt. Servs. v. United States*, 78 Fed. Cl. 366, 377 n.12 (2007) (quoting *IDEA Int'l, Inc. v. United States*, 74 Fed. Cl. 129, 139 (2006)); *Tarheel Specialties, Inc.*, B-298197 et al, 2006 WL 2820577 at *3 (Comp. Gen. July 17, 2006). Non-FSS products and services may not be purchased using FSS procedures. *Tarheel Specialities, Inc.*, B-298197, at *3; *OMNIPLEX World Servs. Corp.*, B-291105 et al, 2002 WL 31538212, at *4 (Comp. Gen. Nov. 6, 2002). Instead, their purchase "requires compliance with the applicable procurement laws and regulations, including those requiring use of competitive procedures." *Tarheel Specialities, Inc.*, B-298197, at *3; *see also* 48 C.F.R. § 8.402; *OMNIPLEX World Servs. Corp.*, 2002 WL 31538212, at *4. Eracent, a non-FSS contractor, alleges that the Navy's exercise of the option in 2007 violates regulations because the enterprise-wide license to BDNA's inventory application and one year of support included with the

[3]The Federal Acquisition Regulations ("FAR"), codified in Title 48 of the Code of Federal Regulations, do not specify the procedures that must be followed to place delivery orders under a FSS. Instead the regulations state that "[o]rders placed under a Federal Supply Schedule contract. . . must, whether placed by the requiring agency, or on behalf of the requiring agency, be consistent with the requiring agency's statutory and regulatory requirements applicable to the acquisition of the supply or service." 48 C.F.R. § 8.404(c)(3) (2006).

software purchase are not items on DLT's FSS contract. In its complaint, Eracent made a number of other arguments which are no longer advanced.[4]

An agency placing an order pursuant to the GSA FSS procedures is not required to consider a contractor without a FSS contract. 48 C.F.R. § 8.405-6. A non-FSS contractor generally thus does not have standing to protest an order awarded pursuant to the FSS contract program because such a contractor is not an "actual or prospective bidder[] or offeror[] whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2)(A); *see also Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1352 (Fed. Cir. 2004); *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1370 (2002). However, a non-FSS contractor may have standing to challenge the award of any non-FSS items on the FSS order, assuming it could have furnished them, because these non-FSS items are subject to the requirement for "full and open competition" as defined in 41 U.S.C. § 259(b)(3). *See ATA Def. Indus., Inc. v. United States*, 38 Fed. Cl. 489, 494-97 (1997).

The issue, therefore, is whether DLT's FSS contract, as modified in 2004, can be "reasonably interpreted" to include the enterprise-wide license to BDNA's inventory application along with the one year of support in 2007. *Tarheel Specialities, Inc.*, B-298197, at *4.

I. BDNA Inventory Application

The modification to DLT's FSS contract, executed on September 10, 2004, assigned a SIN and manufacturing number to the license for BDNA's inventory application. The SIN and manufacturing number have not changed. BDNA's inventory application, as a software product, however, has evolved. Thus, the fixed manufacturing number at any point in time may refer to a slightly (or substantially) different product. Plaintiff acknowledges the inevitability of changes in software over time and does not insist that every update requires an effort to qualify a new product for the supply schedule. The real issue, then, is whether plaintiff has shown that the product placed on

---

[4]These arguments include that the Navy failed to follow mandatory competitive procedures for FSS task and delivery order contracts in 2004 and that the Navy improperly exercised an expired option in the delivery order. The latter argument was built on a faulty factual premise, and the former argument would, in any event, be untimely.

the GSA schedule in 2004 is so different from what was purchased in 2007 that it constitutes a new product, which in fairness to other potential suppliers, should have been the subject of an amendment to the FSS schedule. Eracent asserts that BDNA's inventory application had "been the subject of numerous, material revisions" during those three years, (Pl.'s Reply Br. at 24), and that what was ordered differed substantially from the approved items.

By purchasing a license to a software product, the Navy acquires both the software product and the license agreement. The license agreement to BDNA's inventory application includes "[ ]" to the licensed product. (AR 161.) "Updates," as defined in the agreement, "[ ]." (*Id.*) In 2007 the Navy purchased the BDNA Master Software License and Maintenance Agreement, with the same terms agreed to in 2004. According to the terms of this license agreement, the software product purchased in 2007 includes all updates available in the prior three years. However, the product as it existed in 2004 came with an automatic entitlement to all subsequent updates. With respect to free updates, therefore, the products are not different.

Although Eracent alleges that there were substantial changes to the software and license agreement, other than these free updates, it has no direct proof to support that claim. Instead, it points to a report titled, "Department of the Navy Enterprise IT Asset Management Lessons Learned," issued by the Navy, dated June 9, 2006, and a press release issued by BDNA, dated June 11, 2007, marketing BDNA's application. The report describes BDNA's application as "a relatively immature product" when it was initially implemented.[5] (AR PL-146.) The press release states that BDNA Inventory 4.0 "delivers a new user interface" and "provides increased flexibility in how information is visualized and analyzed by enhancing policy-based access

---

[5]Although the "Lessons Learned" report was not part of the official administrative record, we permitted plaintiff to add it for the purpose of asserting that substantial differences exist between the software ordered in 2007 and the software added to DLT's contract in 2004. The report does not explain how or why this product was characterized as immature at implementation. We are reluctant to draw conclusive inferences for that reason.

control capabilities."[6] (Pl. Br. Att. 8 at 1.) We do not know whether BDNA treated these changes to the software as free updates or as new features or enhancements, [ ].

As for the software license, Eracent argues that the changes made to the license before issuance of the delivery order but after the amendment to the schedule were material. Specifically, changes were made to the following provisions:

- Section 2.g "Audit"
- Section 6.c "Payment"
- Section 10.a "Governing Law"
- Section 10.h "Purchase Orders"
- Section A "Fees"
- Section B "Term"

(AR 368-69.) Some of these changes were necessary for the license to comply with the FAR. None of these changes altered the definitions of "licensed product" and "updates."

Defendant counters plaintiff's inferences with inferences it advocates. It points out that DLT's FSS contract includes the same SIN and manufacturing number as the ordered item. It argues that if the software products differed, then they would have had different SINs and manufacturing numbers. Intervenor also noted at oral argument that BDNA [ ] for the software available through the option. Presumably, BDNA would [ ] the price for a *new* software product.

In the final analysis, we are left with competing inferences only. The court understands software might evolve over time, but we have no real evidence that the software product purchased in 2007 evolved to such a degree that it constitutes a product materially different from that approved on DLT's FSS contract in 2004. A permanent injunction is extraordinary relief and requires stronger evidence than that provided by plaintiff.

---

[6] Plaintiff did not move to supplement the record with this document; nevertheless, we will consider it.

II. One-year of Support

DLT's FSS contract offers maintenance as a separate item from BDNA's inventory application. The delivery order, at Option 0006, references this one year maintenance agreement but adds that maintenance fees are "payable in quarterly arrears," AR 147, to avoid violating 31 U.S.C. § 3224 which prohibits government agencies from paying for services until the services have been provided. The Navy chose to exercise option 0005AA, but not 0006. Thus, the Navy paid for the one year of support along with the software purchase. Eracent argues this payment structure violates the statute because the Navy "paid in advance" for the year of support included with the software purchase.

Defendant explains that the maintenance item on DLT's FSS contract is for one year of maintenance beyond the year of support provided with the software purchase. Defendant asserts that the year of support included with the software purchase is gratuitous, as evidenced in part by [ ].

With respect to Eracent's assertion that the Navy illegally paid for services prematurely, we hold that Eracent lacks standing to assert this argument. Both BDNA's inventory application and year of maintenance are included on DLT's FSS contract. The inclusion of one year of support with a software purchase does not demonstrate that the Navy ordered a non-FSS item. The extent of Eracent's standing is to assert that a non-FSS item was purchased improperly using a GSA FSS delivery order. Even if the pre-payment was improper, correction of the violation would not affect the procurement to Eracent's advantage. Thus, Eracent is not an "interested party" or "actual or prospective bidder[] or offeror[] whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2)(A); *see also Banknote Corp. of Am., Inc.*, 365 F.3d at 1352; *Myers Investigative & Sec. Servs.*, 275 F.3d at 1370.

## CONCLUSION

Eracent has not demonstrated that the Navy improperly used a FSS delivery order to purchase items not on DLT's GSA schedule contract. Nor does Eracent, as a non-FSS contractor, have standing to challenge a potential violation of 31 U.S.C. § 3224. Accordingly, we deny plaintiff's motion for judgment on the administrative record and request for permanent injunction,

and grant defendant and intervenor's cross-motions. The Clerk is directed to dismiss the complaint. No costs. Judgment accordingly.

s/ Eric G. Bruggink
ERIC G. BRUGGINK
Judge